## MYERS v. LUZERNE COUNTY.

(Circuit Court, M. D. Pennsylvania. July 29, 1903.)

### No. 3.

1. FEDERAL COURTS—JURISDICTION—DETERMINING RIGHT TO FUND IN COURT.
   A federal court has jurisdiction to determine the right to the proceeds of a judgment rendered therein which has been paid into court, as be-tween different claimants who appear and assert their claims, regardless of their citizenship.

2. ATTORNEY AND CLIENT—CONTRACTS BETWEEN—VALIDITY.
   While a contract by which an attorney purchases the interest of his client in a claim in litigation is to be closely scrutinized, it is not neces-sarily invalid; and where it appears that the parties dealt on equal terms, that the purchase was at the solicitation of the client, and that no ad-vantage was taken of the relationship, it will be sustained.

Sur Petition of George W. Radford to Take Money out of Court.

Levi T. Griffin, for petitioner.

James D. May, opposed.

¶ 1. Supplementary and ancillary proceedings and relief in federal courts, see note to Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 36 C. C. A. 195.

¶ 2. See Attorney and Client, vol. 5, Cent. Dig. § 240.

ARCHBALD, District Judge: On February 25, 1903, the plaintiff recovered a verdict in this case for $14,750, and the present controversy is over the ownership of one-half of it, which, on account of the conflicting claims thereto, the defendant has had leave to pay into court. Ownership is asserted on the one hand by the petitioner, George W. Radford, and on the other by George W. Myers, the plaintiff's son. Both parties, though resident in Detroit, Mich., have submitted themselves to the jurisdiction of this court by petition, answer, and extended proofs going in to the entire merits, and there can be no question, under the circumstances, as to the authority of the court to determine to whom the fund belongs. Minn. Co. v. St. Paul Co., 2 Wall. 609, 17 L. Ed. 886; Morgan Co. v. Texas Cent. Ry., 137 U. S. 171, 11 Sup. Ct. 61, 34 L. Ed. 625; Rouse v. Letcher, 156 U. S. 47, 15 Sup. Ct. 266, 39 L. Ed. 341; Havens v. Pierek (C. C. A.) 120 Fed. 244.

The money in court was recovered on a contract entered into February 22, 1895, between Elijah E. Myers, an architect of Detroit, Mich., and the county commissioners of Luzerne county, Pa., for plans for the construction of a new courthouse at Wilkes Barre. Col. Myers was to receive 5 per cent. on the cost of the building, of which $5,000 was to be paid down, $5,000 when modified sketches had been prepared and delivered, and $10,000 on the delivery of complete working drawings. The rest was not to be due unless the courthouse was built, and, as it never was, it is of no significance. Col. Myers complied with his part of the contract, and was paid the first two installments of $5,000 each; but upon delivery of the working drawings he was met with a refusal on the part of the county to pay the $10,000 thereby due. After several ineffectual attempts to secure the money, the case was put in the hands of John T. Lenahan, a prominent attorney of Wilkes Barre, Pa., who in July, 1895, brought suit in the courts of Luzerne county. Though Mr. Lenahan expressed himself as confident of winning the case, nothing further was done until some time in 1897 or 1898, when, on account of the danger of local prejudice, application was made for a change of venue, and after a further delay of two or three years was finally allowed by the court, November 9, 1900, to the neighboring county of Columbia.

In the meantime the plaintiff, on January 2, 1896, assigned a half interest in the contract to his son, George W. Myers. It is said by Col. Myers that this was brought about by importunity, and was without consideration, except the promise of his son to assist in the prosecution of the case, which was not carried out. On the other hand, it is said by the son that he held notes of his father to the amount of $32,500, which had been given him for securing the contract, and which he destroyed at the time of the assignment. This is denied by the father, and so far as it is necessary to the case I am prepared to find that it is not true. At the same time he was authorized to draw the first two payments for his father, out of which he retained $6,000 without apparent demur; and it was he also who put the case in Mr. Lenahan's hands, which seems to imply some control over it. But it is not material. The assignment from his father gave him a half interest for the time, and that is all we need to know. It is by virtue of it that he makes his present claim.

The first connection that George W. Radford had with the case was as attorney for the plaintiff, Elijah E. Myers. In September, 1899, when no progress seemed to be made, Col. Myers, who had long been his client, consulted him with regard to it. Mr. Radford at once took the matter up with Mr. Lenahan, writing him numerous letters, but without result, except to learn that, as already stated, on account of local prejudice, application had been made for a change of venue. This was the condition when, on December 9, 1899, Col. Myers, to whom Mr. Radford had made several previous loans of money, applied to him for additional accommodation, and proposed to turn over his interest in the contract as collateral security. He asked for a hundred dollars, which, with that already advanced, would amount, as was figured, to over $4,600. Col. Myers explained to Mr. Radford that one-half the contract had already been assigned to George, and it was recognized that if he held onto the assignment there would be little, if anything, coming to Col. Myers after he had settled with Radford. But it was stated by Col. Myers that the assignment was without consideration, and if he succeeded, as he hoped, in getting George to surrender it, then Radford was to account to him for that interest also, after deducting for expenses and services. The trust relation so established still continues.

So the matter stood until the next April. At that time George, who had been several times ineffectually approached by both his father and Radford, came forward with the proposition to turn over his interest to Radford on condition that the latter would go on and prosecute the suit, and account to him for one-half of what he recovered, after deducting a fee of $1,000, which Radford was to have as attorney, and half of the necessary disbursements. This was agreed to, and a writing executed April 2, 1900, by which, on the conditions named, he assigned and surrendered his interest to Radford, to which Col. Myers, who was present, gave his assent. Subject to the duty of accounting, this vested in Radford entire control of the matter.

On April 11, 1900, nine days later, George W. Myers came to Mr. Radford's law office in Detroit, and wanted to know what he would give in cash for his interest, offering to make an absolute assignment, and step out altogether, as he expressed it. Radford told him he was satisfied with the existing arrangement, but George said he had to have money, and wanted Radford to give him $1,000 for it. This he refused to do, and declined to make any offer, telling him that his father, as he knew, claimed he had no actual interest, and that if he paid him anything Col. Myers could subsequently question it. George insisted that his interest was worth something, which being conceded, he offered it for $750, and when that was refused kept coming down until finally Radford agreed to take it at $150. This was paid by check, and an assignment executed, Radford exacting a guaranty that George was the owner of the interest, and had not otherwise disposed of it, and George at the same time giving up the agreement of April 2d, which embodied the existing arrangement between them. This assignment was absolute in form, and was intended by George as a complete disposition to Radford for $150 of the half interest derived from his father. The case turns upon the character and validity of it.

It is testified by George W. Myers that the transaction of April 2d was a loan and not a sale; that it was to be repaid when the money was collected on the contract, or, as he says at another place, when he could; and that the assignment was simply to stand as collateral security. It is further, and not very consistently, charged that it was obtained from him in its present absolute form by misrepresentation; Radford stating at the time, as it is said, that the assignment from his father of a half interest was good for nothing because of a previous assignment to him (Radford). This is so contradicted at every point by the other testimony in the case that I am convinced it is not true. At the outstart the assignment itself, which, as we have seen, is absolute in terms, would have to be reformed, and there is everything to confirm rather than disturb it or authorize a change. Not only have we the statement of Mr. Radford as to what occurred at the time, which I believe, but his testimony is sustained in part, at least, by that of Edward Widdifield, who was then a stenographer in Radford's office, and was called in to witness the paper. After he had returned again to his own room, he says that George W. Myers came out angry and swearing, and, having been asked what was the trouble, said he had got rid of the damned Wilkes Barre matter, and guessed he had got as much out of it as the old man would after Radford was through with him. George also told his sister, Florence, some time later, in the presence of his mother, that he had sold out his interest and had nothing more in it, and did not think his father would ever get anything out of it. His mother also testifies that he frequently told her he had sold out to Radford, and he said the same thing to his father soon after the occurrence. This he also repeated in February last, when the new suit brought in this court was coming up for trial. Having been told by his father that Radford wanted to see him about the contract, he replied that he had sold out the damned thing, and did not want anything more to do with it—a position he consistently maintained when Radford telephoned him the day before Col. Myers and he started for Scranton. It cannot be expected that his single and unsupported oath will prevail against the force of this combined and contradictory proof, nor that the belated interest which he manifested when he learned of the large verdict that had been recovered—stirring around to get nine $20 gold pieces and tendering them to Mr. Radford—will do away with the effect of his previous declarations and indifference.

It is urged, however, that by the arrangement of April 2, 1900, Radford became the attorney of George W. Myers, undertaking for a contingent fee of $1,000 to prosecute to a conclusion the pending suit, or such other as might be instituted, and that because of this relation the assignment of April 11th, even if taken as a sale, cannot be enforced. It must be confessed that the agreement referred to, to the extent specified, established the relation of attorney and client; and although it may be that the moving purpose in the mind of Radford was to secure control of the case without chance of interference, by which the other was obscured, if not lost sight of, we cannot disregard the fact that he was to account to George in the end for all that he got over and above the compensation and deductions agreed upon, wheth-

er it was large or little. Neither is it an answer to the argument to say that the claimant by the agreement is not in any event entitled to the fund, but only to an accounting by Radford out of it. Assuming it to be so, the present proceedings are sufficiently elastic to enable the court to refer the case to a master to take an account, if the claimant has otherwise established a right to it. The case, in my judgment, does not turn upon that question. Admitting all that has been said with regard to the relation between the parties, the sale to Radford is not necessarily invalid. An attorney is not prohibited from making any bargain whatever with his client, but only from taking undue advantage of him, with the burden upon him of showing that he has not. The rule is thus laid down in 3 Am. & Eng. Enc. Law (2d Ed.) 332:

"In all dealings with his client the highest degree of fairness and good faith is required of the attorney. The courts view all such transactions with suspicion, and examine them with the utmost scrutiny, and, if they present even a suggestion of unfair dealing, the burden of proof lies on the attorney to show the honesty and good faith of the transaction, and that it was entered into by his client freely and understandingly."

This is a clear and comprehensive statement of the law by recognized authority, and we do not need to go further for it. It means no more, however, after all, than, as has just been said, that the attorney is not allowed to take advantage of the relation or the confidence which it begets to the detriment of his client. His duty is to look after his client's interests, and not to bargain for them, and the temptation induced by a benefit to himself in that way is to be avoided. But it cannot be said that there is anything that calls for intervention upon that ground here. George W. Myers does not lack in business shrewdness, and he knew fully as much about the subject-matter of the bargain as did the attorney with whom he was dealing. He came to him of his own accord, determined to sell, and he finally brought down his price to the point where the other was willing to take the risk involved and buy. What was so bought and paid for was the doubtful outcome of a lawsuit which had dragged its slow length along for nearly five years. By the existing arrangement Radford was already assured of the first $1,000 recovered and his disbursements, and George's interest was represented only by what was over and above that, and it was for that that they dealt. We must look at the case as it then stood, and not as it has now turned out. A lawsuit is always an uncertainty, and none more so perhaps at the time than this one. Nearly three years still went by before there was any result or even an approach to it. A new suit, with the aid of new counsel, having been brought in this court last January, and a speedy trial reached, the plaintiff got a verdict; but it was simply because the defendant was found to rely upon an equity, which, as is well established, cannot be asserted in an action at law in a federal court. A contemporaneous parol understanding was attempted to be set up, that the cost of the building for which Col. Myers was to furnish plans should not exceed a certain sum. This defense would have been entirely available in the state court, where the first action was brought, and with the jury sitting as chancellors, and proof being made that $10,000 had already been paid the architect for what he had done, it is not difficult to

presage the result. Aside from this, it was open to the county also to have had the contract reformed by bill to the same effect, if able to command the required proof. It is true that it was not known at the time of the sale to Radford that this was the defense. It is only referred to to show upon what a narrow point the case finally turned. As was well said at the argument, the plaintiff won on the letter of his bond. But it was known that the case in the hands of able counsel, who continued in it to the end, had dragged along for years in the state court, and that to avoid the certain prejudice of the local jury in one county it had been transferred at last to another, where much the same prejudice against the case was likely to prevail; and no one understood better than George W. Myers, who claims that he secured the original contract from the county commissioners, what infirmities might lurk in it thereby. The most he asked for was $1,000, but finally took $150, and not only at the time, but after he had had abundant opportunity to think it over, expressed himself as content with his bargain. It is useless to suggest, under such circumstances, that advantage was taken of him, or that Mr. Radford profited by the confidence induced by the relation to get from him what he had. As the case has turned out, it would have been better, of course, if he had held onto his interest, but to undo the transaction upon that ground, which is really the only one there is, would be an unwarranted stretch of power.

Let an order be drawn awarding the fund to the petitioner, George W. Radford, and dismissing the claim of George W. Myers, with costs.