### TONTRACTS BETWEEN ATTORNEY AND CLIENT. ·

Superior Court of Cincinnati.

JOHN C. HEALY ET AL v. JOHN G. ROBINSON ET AL.

Decided, April, 1911.

*Attorney and Client—Contracts Between, for Services and Compensation—Provision for a Portion of the Amount Recovered to go to the Attorney Not Champertous, When—Attorney Can Not be Remitted to a Quantum Meruit, When—Equity—Parties.*

1. A contract wherein a client is released from payment for services already rendered, or thereafter to be rendered, in connection with a specific matter, and which binds the client to pay all costs and expenses, and the rights of the attorney are limited to a certain specific fund to be recovered, or received in compromise, and in the event this fund does not come into existence as contemplated, the attorney is to receive nothing, is a valid contract in the absence of any showing of ·undue influence, fraud or duress.

2. Such a contract will be construed to operate as an equitable assignment, and is enforcible by an action in equity.

3. Where the fund so recovered is in the form of stock certificates which have been pledged, the pledgees are proper parties to an action brought by the attorney to establish his rights therein.

4. Greater liberality is ˙allowed in equity than in law, in pleading matters of inducement.

*Frank F. Dinsmore* and *Charles M. Leslie,* for motions and demurrer.
*John C. Healy,* contra.

HOFFHEIMER, J.

This cause came on to be heard on the motion of defendant to strike out certain allegations in the petition for the reason that they are immaterial and are statements of evidence; and also on defendant's motion to make the petition more definite and certain by setting out the value of services rendered and the amount claimed to be due; and also on defendant's demurrer. The demurrer raises questions as to (*a*) the validity of the contract; (*b*) plaintiffs' right to proceed herein in equity; (*c*) misjoinder.

The motion to compel plaintiffs to set out the value of the services rendered and to state the amount they seek to recover, necessarily assumes that the contract itself is void and that plaintiffs, if entitled to recover at all, are remitted to *quantum meruit*, for, if the contract sued upon is valid and an action is maintainable thereon at law or in equity, it affords the basis of recovery because it measures the rights and obligations of the parties.

(*a*). The contract shows that it was entered into by and between the parties thereto after the relation of attorney and client had commenced and it is with reference to the subject-matter in litigation. The contract appears to have been made voluntarily, because at the solicitation of the client. By it the client is released of all payment of the reasonable value of services already rendered or thereafter to be rendered in prosecuting the client's claims against his father and in defending him against suits threatened by his father. While the client agrees to pay all costs and expenses, the attorney's rights are limited to a certain specific fund to be recovered or received in compromise, and in event this fund does not come into existence as contemplated, the attorney is to receive nothing.

During the oral argument it was contended that this contract, because entered into after the relation of the parties had commenced, and because of the subject-matter, was void, a claim which at page 13 of their brief, defendants do not seem to seriously press. But be that as it may, and notwithstanding the existence of some isolated authorities to the contrary, contracts

such as the one sued on, are valid in law, unless set aside for un-
due influence, fraud or duress.   *Vanasse* v. *Reid*, 111 Wisc., 303;
*Meyers* v. *Luzerne County*, 124 Fed., 436; *Rolfe* v. *Rich*, 149 Ill.,
436; *Rowan* v. *Mali*, 42 Md., 513; *Reece* v. *Kyle*, 49 O. S., 475;
*La Clede* v. *Keeler*, 109 Ill., 385; *Kisling* v. *Shaw*, 33 Cal., 425.

It may also be noted in passing that in *Carlton* v. *Dustin*, 10 W.
L. B., 294, and in *Thirk* v. *Neible*, 156 Ind., 66, the duress was
manifest, and there was no allegation as here, of solicitation of
the contract by the client, which latter, certainly for the pur-
poses of pleading at least, might well be held to negative any
presumption of unfairness that might otherwise exist, if it were
necessary.

(*b*).   The contract then being valid, we are remitted to the
question as to whether plaintiff may maintain an action in equity
as he is endeavoring to do here.   Had this contract contained an
express assignment or express reservation of lien, there could be
no doubt that the plaintiff would have a concurrent remedy:
either an action for conversion, where he would look to the indi-
vidual responsibility of the trustee, or an action to compel an ac-
counting in equity, following the fund itself, precisely as plaintiff
is undertaking to do here.

In *Wright* v. *Coxe*, 15 How. (U. S.), 415, it was held, in sub-
stance, where a contract between an attorney and client had been
entered into whereby the attorney was to receive a stipulated
portion of the amount to be recovered, that the fund was charge-
able with a lien in favor of the attorney, and that equity would
maintain jurisdiction to enforce the lien and compel an account-
ing if a more adequate remedy could thus be obtained than could
be given in a court of law.   In that case, in answer to the objec-
tion that plaintiff had an adequate remedy at law, the court say:

"There may be a legal remedy and yet if a more complete rem-
edy can be had in chancery it is a sufficient ground for juris-
diction."

And the same court also say:

"The evidence proves that the complainant was to receive a
contingent fee of five per centum out of the fund awarded,

whether money or script. This being the contract, it would constitute a lien upon the fund, whether it should be money or script. The fund was looked to and not the personal responsibility of the owner of the claim.''

What difference can there be in principle, where by fair construction the contract itself is construed to operate as an equitable assignment. Under the authorities, no particular form is necessary in equity to constitute such an assignment, and the question would be one for the court, to be gathered from the intention of the parties, as evidenced in the language used and the circumstances. *4 Cyc.*, 46-47; *3 Pomeroy's Eq. Jurisp.*, Section 1282.

By the terms of this contract plaintiff not only relinquished all claims for the reasonable value of services already performed and to be performed but he was to receive nothing; and the debt, if any, was to be wholly extinguished, unless the specific fund in contemplation of the parties came into existence. His rights, therefore, were limited to that specific fund, and when it came into defendant Robinson's hands, equity would regard it, under the circumstances and because of the evident intention of the parties, as found in the contract, as an equitable assignment, *pro tanto,* plaintiffs' share, although no such assignment had been expressly agreed to, *in haec verbis.* Under such circumstances, cases such as are cited by defendant, wherein it appears that the party seeking recovery had no interest by the contract in the specific fund, or where the ordinary relation of debtor and creditor merely is created without limiting and restricting recovery to the specific fund to be created, or where the creditor may look to other funds (see for example, *Kershaw* v. *Snowden,* 36 O. S., 181; *Christmas' Admr.,* v. *Griswold,* 8 O. S., 558), are to be distinguished.

Under the circumstances as are here stated, it would seem that *Gillette* v. *Hickling,* 16 Ill. App., 392, is pertinent. In that case it was held that the rule, that an agreement to pay a debt out of the principal fund does not constitute an equitable assignment *pro tanto* that fund, does not apply, where the creditor's claim is by agreement to be extinguished unless realized out of such fund. In such case the agreement to pay out of that precise fund

and limiting the creditor thereto would operate as an equitable assignment *pro tanto*.

In *Bennett* v. *Donovan*, 83 N. Y. App. Div., 95, B, as the successor of one Regan, an attorney, brought suit to recover Regan's interest in a contract of employment, claiming *although there was no such assignment*, that the contract operated as an equitable assignment to Regan of one-fourth of the interest to be recovered. Defendants in that case, it seems, contended, as it is contended here, that plaintiff must be remitted to an action at law to recover the value of his services. The court, however, held that the only fund that Regan looked to (as does plaintiff here), was the fund to be recovered; that he was to receive nothing if no such fund arose (as is the case here); that the contract *contemplated an assignment* of so much of the same as should equal one-fourth thereof, and that he had an equitable right to an accounting therefor. In the course of its opinion, the court say:

\* \* \* "The theory of the plaintiff's action, supported by the findings of fact and conclusions of law, to which there are no exceptions in the record, is that there was an equitable assignment of one-fourth of whatever money or property should be recovered by the Donovans in the proceeding to Regan and this plaintiff, and we are clearly of opinion that the contract contemplated such an assignment, however inartificially the same may be expressed in the agreement. It was not a mere contract of employment. A definite fund, unknown in amount and uncertain in character, was the object of the litigation to be undertaken. The Donovans in effect said that they were not willing to pay Regan for his services out of any moneys of their own, but if he was willing to undertake the work of defeating the will of Mary Johnson, he should have one-fourth of the money or other property which might be brought to them as heirs at law and next of kin, and if the litigation was fruitless then he was to have nothing for his services The only fund that was involved was the fund that they hoped to divert from the persons named in the will; upon a recovery of this fund depended absolutely the right of Regan to recover, *and this gave him an equitable right to an accounting for the money or other property received as the basis of his compensation, and contemplated an assignment of so much of the same as should be equal to one-fourth of the money or property recovered.* It would be unreasonable to suppose that the parties to the contract of March, 1897, contemplated that the

fund to be recovered was to vest absolutely in the Donovans, and that Regan was then to look to them for the payment of one-quarter of the proceeds; that his claim to compensation was to be subjected to the risks incident to its payment over to the heirs at law and next of kin. He was taking all of the risks of recovery and it can not be that the courts would have permitted creditors of the Donovans to come in between them and Regan and take this fund, leaving him to look to the Donovans for his compensation, and if this would not have been permitted to creditors, it is difficult to understand how the defendant appellant can have any standing to claim that there was not an equitable assignment of the one-fourth part of the fund involved in the litigation. This seems to us clearly the doctrine of *Deering* v. *Schreyer*, 171 N. Y., 451, which we are unable to distinguish in principle from the case at bar. The fact that there were executors who had or might have had interest in the funds, and that the contract contemplated an accounting for the moneys and property which might be realized, were sufficient to give equitable jurisdiction, and as some one was clearly entitled to a one-fourth interest in the fund which had been restored to the defendant appellant, she is not in a position to complain because the court has decided that the plaintiff, rather than the executor of the estate of William H. Regan, is entitled to one-half of the assigned fund." [Italics mine.]

In *Deering* v. *Schreyer*, 171 N. Y., 451, which arose on an agreement between attorney and client and the principle of which decision is referred to in *Bennett* v. *Donovan (supra)*, the court, referring to the right to proceed in equity, say:

"The jurisdiction of a court of equity to entertain this action is challenged by the appellants, who insist that the plaintiff had an adequate remedy at law and hence could not resort to equity for relief. We agree with the learned justices of the Appellate Division, who, as we read their opinions, united in holding that the written agreement constituted an equitable assignment of fifty per cent. of Schreyer's interest in the award and authorized a suit in equity to enforce it." Citing 87 N. Y., 359; 107 N. Y., 118; Pom. Eq. Jur., Section 137.

That there may be an equitable assignment of the fund *pro tanto* and an equitable lien arising on the contract although there was no express "assignment" in the contract, would also seem to clearly follow from *Larwill* v. *Buckingham*, 46 W. L. B.,

235 (affirmed by the Supreme Court, 65 O. S., 566); for the principles involved, *Thatcher* v. *Railroad*, 78 O. S., 175; *Seymour* v. *Freer*, 8 Wall., 202.

In view of the foregoing, plaintiff notwithstanding the fact that he may have some other action open to him, nevertheless, if he deems his remedy more adequate may maintain an action in equity and in the manner as he has chosen.

(*c*). If the plaintiff is entitled to compel Robinson to account to and to deliver to plaintiff a stipulated share of the stocks and dividends thereon from the time he received them up to the filing of this suit, and as he is endeavoring to do, then under the averments of the petition it would seem to me that there is no misjoinder of the parties, for the parties with whom the stock is alleged to have been pledged and who necessarily have an interest therein, would be necessary or proper parties in order to enable the court to do complete justice and to make its judgment here comprehensive and to finally enter a decree, in event that becomes necessary, whereby this plaintiff may be given all his rights, without circuity of action or other litigation. As plaintiff well states, if defendant has hypothecated more than his share and should be unable on that account to perform the order of the court, if that order should require him to transfer to plaintiff his share, then plaintiff would have the right to fasten on the equities in his favor, as between him and the pledgees, on the excess in their hands, after realizing their several debts.

(*d*). The motion to strike out affects certain matters which are matters of inducement merely. In equity the rule contemplates greater liberality in such matters than at law, especially where such allegations do not tend to enlarge the issues or where the defendant can not be actually aggrieved thereby. *Rockwell* v. *Day*, 84 App. Div. (N. Y.), 437; *Bogardus* v. *Street R. R.*, 62 App. Div. (N. Y.), 377.

In *Park & Sons Company* v. *National Druggists' Assn.*, 30 App. Div. (N. Y.), 508, it was said by Rumsey, J.:

"The *nature* of the relief frequently requires, not only that the ultimate facts from which the right to relief arises should be stated, but that facts which are somewhat collateral should be laid before the court so that the *precise* relief required to give to the

party what he is entitled to and the way in which that relief shall be granted may be understood.   For that reason in actions of that character (equity) greater latitude and liberality are allowed in the preparation of the pleading than in other actions and the power to strike out matter which is claimed to be irrelevant should be used with reluctance and caution.''

In view of the liberality then, with which averments of such character are treated in equity, the motion to strike out will be overruled and particularly so, since the averments in question do not tend to unduly encumber the record and because when taken in conjunction with the remaining averments, they enable the court to better understand the nature of and the precise relief that plaintiff seeks, and because they can work no injustice to this defendant.   See *Bank* v. *Railroad,* 16 Bul., 399.

The motions and demurrers are accordingly overruled.

NOTE.—See also on the question of Equitable Assignment, *James H. Smith et al* v. *Baltimore & Ohio Railroad Co.*   (Wickham, J.), affirmed by circuit court without report, *Ohio Law Reporter,* April 17th, 1911 (11 N.P.[N.S.], 65), published after this decision was handed down.