## MYERS *v.* RADFORD.

1. ATTORNEY AND CLIENT—FEES—VALUE OF SERVICES.

In a suit for an accounting between an attorney and his client, in which there was a dispute as to the value and extent of services for which the attorney claimed compensation, upon evidence showing that the principal services in the case were rendered by other lawyers, who tried the action and examined the questions of law, and that a total of $14,918.79 was collected, the allowance of $1,000 as the attorney's fee was sufficient.

2. SAME.

The result was not affected by the fact that under a special agreement and assignment to the attorney of an interest in the claim, the client consented to a fee of $1,000 for a certain part of services rendered and to be rendered, it appearing that such assignment was merged in a subsequent transaction, and that the value of defendant's services did not exceed the amount awarded.

3. SAME—INTEREST—ACCOUNTING.

Interest on an attorney's fees for services is not allowable where no statement was rendered until the hearing, although the client previously demanded an accounting.

Appeal from Wayne; Murphy, J. Submitted June 14, 1911. (Docket No. 25.) Decided October 2, 1911.

Bill by Elijah E. Myers against George W. Radford for an accounting. Mary D. Myers, executrix of the estate of Elijah E. Myers, deceased, was substituted as complainant upon his death. From a decree for complainant, defendant appeals. Affirmed.

*William C. Stuart*, for complainant.

*Thomas A. E. Weadock*, for defendant.

BLAIR, J. This is a suit for an accounting, commenced by Elijah E. Myers in his lifetime, and revived in the name of his wife, as executrix, after his death.

The bill alleges that a proper accounting would show an indebtedness from defendant to complainant of several thousand dollars. The defendant answered, and claimed the benefit of a cross-bill, alleging that such accounting would show that complainant was indebted to defendant in a large amount, and praying a decree therefor.

For many years prior to the year 1906, the complainant, Elijah E. Myers, who in his prime was a national figure as an architect of public buildings, had been a client of the defendant and appellant. On February 22, 1895, the complainant entered into a contract with the county of Luzerne, Pennsylvania, for the furnishing of plans and specifications for a courthouse. The courthouse was never built, but Colonel Myers complied with his part of the contract by delivering the plans and specifications, etc. The first two payments of $5,000 each were made. The third payment of $10,000 was refused by the county, and in July, 1895, the matter was placed in the hands of John T. Lenahan, a lawyer at Wilkesbarre, Pa., who brought suit in the State circuit court of Luzerne county. Mr. Lenahan was employed by George W. Myers, representing his father, and on January 2, 1896, Colonel Myers assigned a one-half interest in the contract to George W.

Myers. Mr. Lenahan did practically nothing with the case until 1897, when he made an application for change of venue. This application was yet undecided when, in September, 1899, the complainant consulted the defendant regarding the matter, at which time the services in question here were commenced by defendant.

On December 9, 1899, Colonel Myers and the defendant had a mutual settlement, resulting in .Colonel Myers giving the defendant a note, bearing that date for $4,613.60, payable on demand, with interest at 6 per cent. On that date, as collateral security for the note and an additional loan of $100 made at the time by defendant to Colonel Myers, the latter assigned his interest in the Luzerne county contract to defendant. On the 2d day of April, 1900, George W. Myers assigned his interest in the contract to defendant:

" The said George W. Radford to account to the said George W. Myers for all amounts received on account of said one-half interest after first deducting therefrom the one thousand dollars as attorney fee of said George W. Radford, also one-half of all court costs and disbursements and other legal services incurred and to be incurred in the collection of the moneys due or to be become due under said contract."

Complainant gave his written consent to this assignment. On April 11, 1900, during the absence of complainant in Mississippi, George W. Myers, in consideration of $150 paid to him by defendant, transferred to defendant " all my interest in and to the foregoing agreement, and in and to the original contract, assigned as in said above agreement specified, and I also hereby guarantee that I am the owner of a one-half interest in said original contract; that I have not otherwise disposed of said contract or my interest therein, and that I have full and complete right to assign the same as herein."

In the fall of 1902, Major Levi T. Griffin, then in the employ of Willard, Warren & Knapp, of Scranton, Pa., was employed in the case, and on January 23, 1903, insti-

tuted suit in the United States court, as attorney of record, with his firm and Lenahan as counsel. On February 25, 1903, verdict was obtained for $14,750. Soon thereafter George W. Myers intervened in the case, claiming to be the owner of one-half of the judgment, and basing this contention upon the claim that his half interest in the original contract had been procured by the defendant herein fraudulently. An appropriate issue was framed, depositions were taken in Wilkesbarre and Detroit, and the son was defeated in his contention. The latter had also started a suit upon the chancery side of the Wayne circuit court against both his father and this defendant, seeking to set aside the assignment he had made to Mr. Radford. With the unsuccessful termination of the son's effort to reach the judgment, the suit in the Wayne circuit was abandoned, and was finally dismissed without hearing. In this latter suit, the defendant herein was solicitor of record for both himself and Colonel Myers.

By August 22, 1903, the judgment, which had then grown to $14,918.79, had been paid in full. For services in the main case and in the intervention of George W. Myers, Major Griffin and Messrs. Willard, Warren & Knapp received a sum of $1,500, of which $500 was for services rendered in the latter matter. Mr. Lenahan was given $500 for such services as he had performed. The defendant herein claims to be entitled to $4,000 for services rendered by him in these two matters, $1,500 of which is claimed for services performed in the two proceedings begun by the son. Upon August 22, 1903, defendant, after paying the fees and disbursements of other counsel, was in receipt of $12,711.23 under the judgment.

From a decree finding a balance due to complainant at the date thereof of $2,004.80, the defendant appeals to this court.

The whole case hinges upon the extent and value of defendant's services in the collection of the courthouse claim.

Defendant testified:

"I claim in the most positive manner to have taken complete charge of that case from the time I was employed in it until it was finished."

Prior to the institution of suit in the Federal court at Scranton, defendant, and later Mr. Griffin and his firm, devoted their efforts to inducing Mr. Lenahan to bring the case to trial in the State court.

Defendant was well acquainted with Mr. Griffin, who had been for many years an eminent member of the Detroit bar, and wrote to him on November 14, 1902:

"Now, however, that I feel the matter is in safe hands I shall be guided entirely by what you advise in this matter."

March 3, 1903, he wrote:

"When I placed the matter in your hands, as I did, I knew the man I was trusting, and my trust is of such a character that I am willing to leave it entirely to you."

March 5, 1903, he writes:

"Had it not been for you, I would now be precisely in the same position I was two years ago, had I not found some one else to take hold of the matter."

March 9, 1903, he writes:

"I considered and knew you to be entirely competent to handle the case, without any assistance from anybody whatever, except such as I might possibly be able to give you, and also except such as you, in your judgment, might think you would need from local attorneys, on account of your handicap by reason of deafness."

Defendant also knew that the firm with which Major Griffin was associated was of high repute and composed of eminent and distinguished lawyers. The questions which might arise would concern the constitution, statutes, and court decisions of Pennsylvania, as to which a foreign attorney would naturally defer to the opinions of eminent lawyers of that State.

On March 2, 1903, after judgment in the principal case, Mr. Griffin wrote to Radford:

"Write to Lenahan, asking him to make out his bill separate. He has nothing to do with this collection. He had the claim for several years, but did not collect it. You really took it out of his hands, and it was collected by this firm with my aid. Out of deference to Lenahan and the courtesy that exists at the bar, and, for that matter, I may say sincerely, with the wish to have him participate in the trial, he was put on the writ, together with this firm, as of counsel. He performed his part all right, and did as good work as any one, but, as you said, and as Judge Willard said, the case tried itself. I could have tried it myself, deaf as I am, with your assistance, or you could have tried it with mine, or this firm could have tried it alone. * * * You have nothing to fear now. You have this firm behind you, and, moreover, you have your judgment, and need not ask any odds of Mr. Lenahan or any one else, and can give such specific instructions as you see fit."

In a memorandum, Mr. Griffin wrote:

"I think it proper for me (Mr. Griffin) to add that I do not at all share in Mr. Lenahan's feelings towards Mr. Radford. It is sufficient answer to say that within 40 days after this firm concluded to take active measures in the matter the judgment was obtained and the amount practically collected. It is a matter of no consequence whose name was used as attorney for plaintiff. Every step that was taken had the approval of some member of this firm."

In his confidential letter of March 26, 1903, Mr. Griffin inclosed memorandum of conversation with Judge Willard, in which the judge said:

"Memorandum made for Judge Willard. The fact is you have saved Radford's entire claim by going into the United States court and he (Radford) ought to appreciate it."

At the foot of this memorandum, Mr. Griffin writes:

"I replied that you did appreciate it and have manifested it."

On July 29, 1903, Mr. Griffin wrote to Radford, after learning that the George W. Myers case would be decided in their favor:

"In view of our success, I take it that the present charge does not come out of your pocket, but I wish it to be reasonable as respects Mr. E. E. Myers and satisfactory all round. I am quite willing, therefore, that you should fix it at your own figures, and I will endeavor to see that it is carried out accordingly. * * * I occupied in all about three weeks preparing for the oral argument and afterwards preparing the brief. I agree that this seems a long time, but everything is uncertain in the law, and I am not willing to leave a point untouched or the presentation of it to the best possible advantage according to my judgment. * * * On the whole, I had thought that a lump sum of $500 would be entirely reasonable for services rendered of this firm, of which I should hope they would contribute $250 to my impoverished financial condition; but, of course, that is a matter wholly for them, as I am not in a position to make any claim as of right."

June 11, 1903, defendant wrote:

"Yours of the 9th instant, also brief, received yesterday. At 10 minutes past 12 last night I finished reading the brief; you can imagine how much I enjoyed it. The case ought to have been won by the mere reading of the testimony; if the brief does not cinch it, I shall be the most surprised individual in Detroit."

August 1, 1903, he writes:

"As to your charge, personally I consider the lump sum of $500 as proposed entirely satisfactory, and heartily consent thereto, on condition that you get not less than half of it; you ought to have it all."

On May 19, 1903, Major Griffin wrote, relative to defendant's attendance at the hearing of the George W. Myers case, which had been set for May 26th:

"You must act on your own judgment about coming. Certainly it is not necessary; yet it would be very pleasant for me, and the amount involved is so large it certainly is nothing against you that you should be at least present at all of the proceedings."

In his letter of April 18, 1903, Mr. Griffin gave Mr. Radford explicit and detailed directions as to the method

to be pursued in taking the depositions at Detroit in the George W. Myers case, and defendant followed them, as he acknowledged in a letter to Mr. Griffin.

After a careful consideration of the letters between defendant and his attorney, and considering the probabilities of the case, we concur in the opinion of the circuit judge that:

"No one may read the voluminous correspondence which passed between the defendant and Major Griffin without being driven to the conclusion that the legal questions involved, both in the main case and in the intervention proceedings, were investigated by the latter and not the former; that Mr. Radford relied implicitly and almost exclusively upon Mr. Griffin for investigation of the legal principles in issue; and that the real work of preparing and directing the Federal case, both upon the law and the facts, was done by the latter."

We also concur in his conclusion that:

"For his entire services in these matters, the action against the county of Luzerne and the proceedings, both Federal and State, instituted by George W. Myers, he will be amply compensated by an allowance of $1,000."

It is urged, however, that the circuit judge failed to consider the effect to be given to the assignment of April 2d, fixing a fee of $1,000 for collecting a one-half interest, and failed to attach sufficient importance to the decision of the Federal judge in the intervention proceedings. The assignment of April 2d was merged in the assignment of April 11th, and its persuasive force is not sufficient to affect the result.

It is said that Judge Archbald's decision (124 Fed. 436) is a final adjudication in the Federal court that defendant was the absolute owner of one-half of the judgment, and therefore, since defendant was merely making a present to complainant, he had a right to fix his compensation for his services. In the course of his opinion, Judge Archbald said:

"Col. Myers explained to Mr. Radford that one-half

the contract had already been assigned to George, and it was recognized that if he held onto the assignment there would be little, if anything, coming to Col. Myers after he had settled with Radford. But it was stated by Col. Myers that the assignment was without consideration, and if he succeeded, as he hoped, in getting George to surrender it, then Radford was to account to him for that interest also, after deducting for expenses and services. The trust relation so established still continues."

On March 16, 1903, defendant wrote to Major Griffin:

"The Colonel advises me there was absolutely no consideration whatever for this assignment, and that the only reason for his doing it was because of the boy's importunities, and who had also succeeded in enlisting his mother to persuade the Colonel in his behalf, upon promises that he would turn over an entirely new leaf, lead a different life, and help his father, which promises he failed to keep. * * * The Colonel's indebtedness to me far exceeds one-half of the judgment, and I intend to pay him any surplus which may be left above the expenses of the suit, my expenses, and services, and his indebtedness, for the reason that I regard the assignment from Col. Myers to his son without consideration, and the boy never had any actual interest, and that when he assigned to me I took it for the benefit of the Colonel."

March 27, 1903, he writes:

"Geo. W. Myers knew then, and knows now, that I took the absolute assignment on the basis of the claim of the Colonel that Geo. W. Myers had no actual interest in the contract, and that whatever I realized, over and above the debt of the Colonel, and services and the expenses of the litigation, should go to the Colonel; and as the debt of the Colonel to me far exceeds one-half of the judgment you can readily see that it is the Colonel's battle I am fighting, and not my own, except the protection I am entitled to for the expense of the litigation and my own services."

We deem it to be clear that Judge Archbald did not intend to determine, and did not in fact determine, that the trust relations between defendant and Colonel Myers no longer existed.

We further concur with the circuit judge in the opinion that complainant demanded an accounting, and that defendant furnished no statement or bill of his services until upon the hearing, and therefore was not entitled to interest thereon.

For a further discussion of the questions invólved, we refer to the elaborate and convincing opinion of the circuit judge. Indeed, we might well have adopted that opinion without further comment.

The decree is affirmed.

OSTRANDER, C. J., and BIRD, McALVAY, and STONE, JJ., concurred.